JAMES F. SCOTT v. C. W. WOOD et al.

1. VENDOR AND VENDEE: SALE: PURCHASE-MONEY NOT RECOVERABLE UN-
LESS ARTICLE DELIVERED AS STIPULATED.—Where it is agreed in a con-
tract for the sale of personal property, that the seller shall retain possession
of the property sold and shall not be entitled to receive the purchase-money
until the property is delivered, the seller cannot recover the price until de-
livery.

ERROR to the Circuit Court of Amite county. Hon. J. A. P.
Campbell, judge.

Plaintiff in error brought his action to recover of defendants
the price agreed to be paid for two hundred bales of cotton.
The contract between the parties was in writing, and is set
forth in the opinion of the court.

It was shown by the testimony, that the cotton was never de-
livered as stipulated, and that on the day the second contract
was made it was burned by the Confederate forces.

The jury, under the instructions of the court, found a ver-
dict for the defendants.

The error here assigned is, that the court below erred in its
instructions to the jury.

*A. P. Hill* for plaintiff in error.

The whole case depends on the construction placed by the
court on the contract of September 21st. The court held that
a delivery of the cotton in Canton was a prerequisite to a recov-
ery. The instrument was as follows:

I have sold to C. W. Wood two hundred bales of cotton,
more or less, at 13 cts. per lb., which I am to deliver at Canton
depot, by his paying me an additional amount of $4 per bale,
said cotton to be at *my risk* until I deliver it at Canton, and
to be delivered by to-day week, this 21st day of September,
1863.

*Unavoidable accidents excepted.*

      (Signed)                         J. F. SCOTT.

The proof showed that there had been a previous agreement in writing for the shipment or rather delivery of the cotton at a different point. This agreement was dated 14th September, 1863, and under that agreement the defendants sent an agent who weighed the cotton and delivered the weights to the defendants. On the 21st, the cotton had been carried to a different locality, of which defendants had knowledge, and the above agreement was made in lieu of that of the 14th of September; and the cotton was burned on the evening of the same day by the Confederate authorities and after the time of the making of this contract; and the question is, whose cotton was it when burned? Was it the cotton of the vendor or vendee?

The sale being evidenced by writing is in compliance with the statute of frauds—it is a sale, the contract is *executed*, not *executory*. The terms employed, " I have sold," indicate a past and consummated sale, still having a relation to the present time; and, although the agreement contains a further obligation on the part of the vendor to deliver at Canton, and shows that he had something more to do about the cotton, still that was not a prerequisite to the sale—it was a *present* and not a *prospective* sale.

But the agreement contains the stipulation that the " cotton is to be at *my risk* until I deliver it in Canton." If that had been the whole of the contract, it would be clear that Scott had assumed the entire risk, and the action of the court was proper; but the insertion of the words " unavoidable accidents excepted," after the date, shows an important qualification.

The whole instrument, then, when properly construed, means the cotton is to be at the risk of Scott, unless it should be destroyed by *unavoidable accidents*, and the burning was one of the unavoidable accidents against which Scott provided in his contract. The view taken by the court was, that those words only had reference to the obligation to deliver the cotton within a week; and that the whole meaning was that Scott would deliver the cotton *within a week*, "unavoidable accidents excepted," and unless prevented by unavoidable accidents he would deliver within one week.

With due deference to the learned judge, it is respectfully sub-
mitted that this is a very narrow view of the case and of the
subject. The words constitute a separate and detached sen-
tence, coming after a full period, and evidently show a delibera-
tion in the contracting party, and being thus isolated they show a
qualification not on any particular stipulation, but a qualifica-
tion on all previous stipulations or undertakings.

They do not affect the validity of the sale; but they modify
all the other undertakings of Scott, and qualify the general as-
sumption of risk by Scott; and Scott has by the whole instru-
ment agreed to do two things—to assume all risk and to deliver
within a week; and these he agreed to do with the important
modification that all the above elements of risk were subject to
the exceptions of such risks as arose from accidents *unavoidable*
by ordinary care and diligence, or by extraordinary care and
diligence, and this is the plain, natural construction of the
paper; and this view is strengthened by the fact that the origi-
nal and prior contract of the 14th September did not contain
that provision, and its insertion in the present one was done to
meet a contingency not provided against in the prior one, and
it will be seen that the original point of delivery was changed
by the parties and a new and different contract made, and this
new contract contains a stipulation not embraced in the first
one.

I think it may be fairly argued that the exception of una-
voidable accidents was intended to apply alone to the general
risk of the cotton, but it is possible that it has reference also to
the obligation to deliver in a week, but it is utterly unreasona-
ble that it should be narrowed to the obligation to deliver in
one week, because this is to attribute the insertion of an *im-
portant* and *controlling* clause to a very *unimportant* and by no
means controlling prior clause. The general risk was a very
important provision in the contract, and the time of delivery
was a very unimportant matter—a delivery in two weeks would
have answered as well as a delivery in one week; no cotton
ports were open, as the court judicially knows, and no factories
for its consumption, and a delivery in one week is not shown to

have been a matter of importance; and it is humbly submitted that it is the veriest trifling to say that this provision does not control the important provision of general risk, but that it modifies a minor and subordinate stipulation as to the time of delivery.

The plainest and most natural application should be made of the language, and the most obvious view is that it was designed by the party to modify his general liability. If it be treated as an executed contract, the law, in the absence of any stipulation to the contrary, would impose the risk on the vendee; but the vendor has agreed himself to the risk of all accidents to the cotton, except such as were not to be avoided by human prudence.

But the court erred in not leaving it to the jury to determine from the surroundings of the case to what this modification applied. It is true that it is generally the province of the court to construe all writings; that is the general rule, but whenever a doubt arises as to what a particular expression or clause refers, it is competent to consider all the surrounding circumstances, so as best to determine to what the clause in question refers, and hence in such case it is the province of the jury to make the application, and in support of the principle that the surrounding circumstances are to be considered, I cite Addison on Contracts, p. 847.

The court then erred in its construction of the paper considered intrinsically and by itself alone, and the court also erred in not leaving it to the jury to decide, from all the surroundings, to what this modification was designed to apply.

That the contract was executed, see the unreported case of *A. H. McKay* v. *J. R. Hamblin*, on appeal from the special court in equity.

*Luckett and Fearn* for defendants in error.

1. The verdict of the jury was not only *not* manifestly wrong, but was manifestly right, and this court will not disturb the verdict because the court below refused the instructions asked for by plaintiff. *Wilkinson* v. *Griswold*, 11 S. & M. 669;

*Wiggins* v. *McGimpsey*, 13 ib. 532 ; *Cantyon* v. *Don*, 27 Miss. Rep. 245 ; and this rule obtains, even in criminal cases where the judgment of the court below is in accordance with law and justice. *Mark* v. *The State*, 36 Miss. Rep. 77.

2. The court below has the right to declare the law, whenever there exists a conflict between the counsel for the parties, and this even in criminal cases. *Green* v. *The State*, 28 Miss. Rep. 687.

3. Was the instruction written and granted by the Circuit Judge the law as applicable to the facts of this case ? We think it most certainly was. The instrument sued on is in the following words : " I have sold to C. W. Wood two hundred bales cotton, more or less, at thirteen cents per pound, which I am to deliver at Canton depot, by his paying me an additional amount of four dollars per bale, said cotton to be at *my* risk until I deliver it at Canton, and to be delivered by to-day week, this 21st Sept., 1863. Unavoidable accidents excepted.

(Signed)     J. F. Scott.

4. The court will discover by examining the instrument of the 14th Sept., 1863, for which the above was substituted, at the request and instance of Scott, the plaintiff in error, that the difference between the two papers consists in three things : First, the delivery of the cotton was to be at Canton instead of Morris Ferry, on Big Black. Second, an additional compensation of four dollars per bale was to be allowed by the defendants ; and, third, Scott protected himself against future legal liability for failing to deliver the cotton, by having inserted in the instrument of 21st Sept., 1863, the words " unavoidable accidents excepted."

The legal effect of the instrument, then, was to compel him to deliver the cotton, under all circumstances, and within one week from the 21st Sept., 1863, at Canton depot, the same being at his risk until delivered, unless prevented from so doing by " unavoidable accidents," that is to say, accidents or casualities beyond his control or power to prevent. The words " unavoidable accidents excepted," were inserted in the instrument,

as the proof shows, for *his protection* and at *his instance* and *request*, and his right to recover in this action depended upon his compliance with the contract, which required that the cotton should be delivered at Canton by him within the time above mentioned, unless prevented from so doing by "unavoidable accidents," and such "accidents" were to excuse the non-delivery and relieve *him* from future liability to defendants.

He failed to deliver the cotton or any part of it, and, therefore, failed to fulfil the condition precedent to his right of action. If sued for a breach of contract, *he* might set up successfully as a defence, that the military authorities of the Confederate States caused the cotton to be burned, and therefore relieved him from all legal liability to defendants in error, or either of them; but surely he cannot recover in this action, until it is shown that he has complied with his contract and delivered the cotton sold to the defendants, in Canton and within the time mentioned in the contract. The instruction given by the court enunciates this, and nothing more, as the law of the case, and as the verdict of the jury was manifestly in accordance with law and justice, we submit that this honorable court will not disturb it.

JEFFORDS, J., delivered the opinion of the court.

There are several assignments of error in this case, but it is conceded there is but one question involved, and that is with reference to the construction of the written contract upon which suit is brought.

It is admitted that on the 14th day of September, 1863, the following written contract was entered into by the parties:

"I have this day sold C. W. Wood 200 bales of cotton, more or less, for which he is to pay me 13 cents per lb. when delivered at Moore's Ferry. I binding myself to deliver the said cotton at Moore's Ferry in 15 days from this date, in fair shipping order; so soon as delivered, then to be at said C. W. Wood's risk.

"JAMES F. SCOTT,"
"C. W. WOOD."

"CANTON, Sept. 14, 1863."

And that afterwards on the 21st day of September, 1863, the following was substituted in the place of the foregoing contract:

" I have sold to C. W. Wood two hundred bales cotton, more or less, at thirteen cents per pound, which I am to deliver at Canton depot, by his paying me an additional amount of four dollars per bale, said cotton to be at my risk until I deliver it at Canton, and to be delivered by to-day week. This 21st September, 1863. Unavoidable accidents excepted.

    (Signed)                           "J. F. SCOTT."

It is also admitted that both of these contracts referred to the same lot of cotton; that it never was delivered at Canton; and was burned by the insurgent authorities on the same day the last contract was signed, the proof tending to show that it was burned after the signing of the contract.

On the trial of the case before the Circuit Court, it appears that the court refused a multiplicity of instructions asked by both plaintiff and defendants, and in lieu of the same gave the following:

1. If the jury believe from the evidence that plaintiff on the 21st September, 1863, contracted to sell the defendants a lot of cotton, and by the terms of the contract, plaintiff agreed to keep the cotton at his risk and deliver it at Canton depot, to defendants, before the money was to be paid for it, and excepted unavoidable accidents, and that he never delivered as agreed upon, then the law is for the defendants, and the jury will so find.

2. The court instructs the jury, that the legal effect of the instruments of writing in evidence was to entitle plaintiff to recover only upon delivery of the cotton in Canton, and if, from the evidence, they believe the plaintiff has not delivered the cotton in Canton, they should find for the defendants.

It was not only the privilege, but the imperative duty of the court to construe the written contract offered in evidence; and we are clearly of the opinion that the construction given to the contract was correct.

We are unable to discover any error in the proceedings and record in this case.

Judgment is therefore affirmed.